

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH ALLRED, | 3:18-cv-00422-CBC |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| DARK HORSE TRANSPORT, LLC, *et. al.*, | |
| Defendants. | |

Before the court are several motions filed by both parties in this case. Specifically, Defendants Dark Horse Transport, LLC[1] ("DHT"), Angel Helsley, and Jeremy Yingling (collectively "Defendants") filed a motion to dismiss, (ECF No. 16), and a motion to compel discovery. (ECF No. 26). Plaintiff Joseph Allred ("Allred") responded to Defendants' motion to dismiss, (ECF No. 19), and Defendants replied. (ECF No. 20). However, Allred has not filed any response or opposition to the motion to compel.

In addition, before the court is Allred's motion to amend the complaint. (ECF 27). Defendants filed a response to this motion, (ECF No. 30), however, Allred did not file a reply brief.

---

[1] This defendant is named as Dark Horse Transport, LLC in the caption and named as Dark Horse Transportation, LLC in the body of the complaint. A declaration of service was returned as to Dark Horse Transport, LLC (ECF No. 8). The court will assume this defendant is one in the same and any references to Transportation are typographical errors.

Having considered all of the above, the court finds as follows: (1) Defendants' motion to dismiss is granted; (2) Allred's motion to amend is denied with prejudice; and, (3) Defendants' motion to compel is denied as moot.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. <u>Factual Background</u>[2]

Sometime in February 2017, Allred accepted a position from Defendant Jeremy Yingling to work as a "hot shot" truck driver for DHT. (ECF No. 1 at ¶ 13). Yingling told Allred that in order to work for DHT as a driver, he would be required to purchase insurance. (*Id.* at ¶ 15). The yearly premium for the insurance would cost $21,960 and Allred was required to pay an upfront amount of $4,500.00. (*Id.*) Allred paid the upfront cost for the insurance. In addition, at some point, Yingling convinced Allred to purchase a trailer owned by Yingling for $9,000.00. (*Id.* at ¶ 14).

Yingling also agreed to hire Frederick "Rick" Williams as a tandem driving partner for Allred after Allred agreed to take out an $18,000.00 loan from Williams's sister to cover Williams's start-costs. (*Id.* at ¶ 17). Thereafter, on September 29, 2017, Yingling loaned one of his trucks to Allred to use with his recently purchased trailer. (*Id.* at ¶ 19). Shortly thereafter, Allred and Williams left on their first "tandem" run for DHT on October 2, 2017.

On October 13, 2017, while on the run for DHT, Williams and Allred were staying in Ogden, Utah. (*Id.* at ¶ 21). At some point, Williams drove the truck and trailer to their motel while Allred had dinner at a local pub and grill. (*Id.*). Later that night Allred took a taxi back to the motel and noticed a wrecked 2018 Chevrolet Duramax in the parking lot. (*Id.* at ¶ 22). When Allred awoke the next morning, Williams, the truck, and trailer were missing. (*Id.*)

---

[2] The facts as stated herein are taken from Plaintiff's Complaint, (ECF No. 1), and are accepted as true for purposes of deciding the motions herein.

Allred called Williams. (*Id.*) Williams answered and stated they needed to leave Ogden immediately and he refused to come back to the motel. (*Id.*) Ultimately, Williams admitted that he a hit the damaged Chevy Duramax in the motel parking lot and he failed to report the accident. (*Id.* at ¶ 23). Thus, he wanted to leave Ogden before he was discovered. (*Id.*)

Allred decided it was best he and Williams part ways. (*Id.* at ¶ 24). Allred purchased Williams a bus ticket to return to home while Allred continued with the run to Salt Lake City in order to pick up two loads. (*Id.*). Thereafter, Allred was contacted by Yingling. (*Id.* at ¶ 25). Yingling told him to meet his former brother-in-law in Sparks, Nevada when he came back from Utah. (*Id.*) Yingling stated he was concerned about his truck and he wanted his former brother-in-law to take the truck and trailer to finish the delivery of the load to Sacramento. (*Id.*) Yingling indicated he would return Allred's trailer to him after the delivery was made. (*Id.*)

Allred contacted Yingling on Monday, October 16, 2017 in order to pick up his trailer. (*Id.* at ¶ 26). Yingling and Allred agreed to meet at the Walmart parking lot in Gardnerville. (*Id.* at ¶ 29). When Allred arrived, the trailer was not there. Yingling told Allred the trailer could not be moved because "they" had chalked the tires and Yingling was "served with an injunction" related to the hit and run accident in Ogden, Utah. (*Id.* at ¶ 30). Yingling explained that no one could move the trailer or use it until the injunction was lifted otherwise they would be subject to "fines and or jail time." (*Id.*) Yingling told Allred that a payment of $10,000.00 would have to be made to "lift the injunction." (*Id.* at ¶ 32). Yingling also claimed that payment would have to be made directly to Yingling because he was served with the injunction. (*Id.* at ¶ 33).

In the meantime, Yingling notified Allred that Williams' sister, Elizabeth Williams-Gonzalez, began demanding immediate payment on the loan she had provided to Allred. (*Id.* at ¶ 35). Yingling stated Williams-Gonzalez's attorney was threatening litigation if repayment was not made. (*Id.*) Yingling claimed Allred would need to pay him

$10,000.00 to lift the injunction and an additional $10,000.00 to pay toward the loan to Williams-Gonzalez. (*Id.* at ¶ 36).

Thereafter, Allred secured a $25,000.00 loan from "an independent investor" in order to pay off the injunction and the loan amount. (*Id.* at ¶ 37). Allred paid the $10,000.00 to Yingling, who provided him with title to the trailer. (*Id.* at ¶¶ 37-38). At this time, Allred learned that Yingling had used the trailer on a few occasions – even though he previously stated it could not be moved until the injunction was lifted. (*Id.* at ¶¶ 38-39). Allred asked for receipt for the payment on the injunction, however, Yingling told him the case was over and the injunction was "levied" by Williams-Gonzalez's attorney. (*Id.* at ¶ 40).

In spite of all of this, Allred went back to work for DHT at some point after paying the injunction. (*Id.* at ¶ 46). When he returned, he was informed that he would now be paid a substandard contract rate until he had driven for DHT without any additional incidents. (*Id.*) Allred believed he was being punished and "extorted" by Yingling for Williams's accident. (*Id.*)

In one of his runs after returning to DHT, Allred took a hot shot run to Colorado. (*Id.* at ¶ 41). On his way there, his truck broke down. (*Id.*) He called the DHT front office to tell them of the situation and that he needed roadside assistance. He was told the insurance he had paid for did not cover roadside assistance. (*Id.*) As a result, Allred was stranded on the side of the road for three days. (*Id.*)

At some point, Allred requested DHT wire him the wages he was owned so he could repair his truck and return to work. (*Id.*) Yingling assured Allred DHT would factor his last runs and send him a "few thousand dollars" to repair his truck. (*Id.*) Ultimately, another trucking company in Colorado loaned Allred a truck in order to deliver his load. (*Id.* at ¶ 42). After advising Yingling of the situation, Yingling stated that DHT officer

manager, "Angel Chelsey,"[3] would "factor" this run into the previous runs so that Allred would have more wages for the repairs. (*Id.* at ¶¶ 42-43).

After delivering the load in Colorado, Allred called and texted Yingling several times to ask about receiving payment of his wages. (*Id.* at ¶ 43). "Halsey" answered the calls and told Allred her hands were tied and Yingling had told her not to send Allred the wages. (*Id.*) "Halsey" apologized several times and claimed she had no idea why Yingling was not taking Allred's calls or responding to him. (*Id.* at ¶ 44). "Halsey" claimed she was instructed to tell Allred that when the factoring company paid for his runs, DHT would forward him the outstanding wages. (*Id.* at ¶ 45). Allred contacted the factoring company and learned that the company had paid DHT for his runs the previous week. (*Id.*)

Allred became suspicious of Yingling and contacted Williams. (*Id.* at ¶ 48). Williams told him that he had been working for Yingling in the weeks following the accident and there was no injunction on the trailer. (*Id.*) Williams also claimed that Yingling had negotiated the issue with the trailer down to $4,800.00. (*Id.*) Thereafter, Allred sent a demand letter to Yingling for a copy of the receipt for the injunction and copies of all legal paperwork related to the alleged injunction. (*Id.* at ¶ 49). Yingling did not respond. Ultimately, on March 2, 2018, Allred received a letter from DHT stating that Allred had been removed from DHT's commercial insurance policy and advising Allred owed an outstanding balance to the insurance company of approximately $2,396.00, which would be deducted from his remaining wages. (*Id.* at ¶ 50.)

---

[3] In the caption of the complaint, Plaintiff names an individual by the name of "Angel Helsley" as a defendant. (ECF No. 1 at 1.) However, there are no references to this individual in the factual background of the complaint. Rather, there is a reference to an "Angel Chelsey" and to a person named "Halsey." (*See id.* at ¶¶ 42, 44-45). The court will assume for purposes of this motion that these references are intended to be in reference to the defendant named "Angel Helsley" and the various names used are typographical errors.

B. Procedural History

On August 30, 2018, Allred filed his complaint in this action against Defendants DHT, Helsey and Yingling. (ECF No. 1). The first cause of action alleges a civil claim under the Racketeer Influenced and Corrupt Organization Act ("RICO") pursuant to federal law. (*Id.* at ¶¶ 51-55). In this cause of action, Allred claims Defendants are liable under the RICO Act based on their alleged violations of three predicate offenses: (1) wire fraud pursuant to 18 U.S.C. § 1343; (2) money laundering pursuant to 18 U.S.C. § 1957; and, (3) sale or receipt of stolen goods pursuant to 18 U.S.C. § 2315. (*Id.* at ¶ 53).[4] Allred also has asserted seven state law claims consisting of a state RICO violation, breach of contract, breach of the implied covenant of good faith and fair dealing for contractual and tortious breaches, conversion, fraudulent or "international" misrepresentation, and intentional infliction of emotional distress. (*Id.* at p. 1; ¶¶ 56-88). The complaint asserts this court has jurisdiction over this case based on federal question jurisdiction due to the civil RICO claim as well as diversity jurisdiction. (*Id.* at ¶¶ 1-5).

*1. Defendants' Motion to Dismiss*

Defendants filed a motion to dismiss the complaint on October 22, 2018. (ECF No. 16). Defendants argue the complaint fails to state of claim under both the federal and state RICO acts because it fails to assert any continuity of criminal acts as well as any relationship to those acts. (*Id.* at 4-5). Moreover, there is no alleged criminal activity that can be discerned from the complaint. (*Id.* at p. 5). As such, Defendants argue the federal RICO claim should be dismissed and the court should reject supplemental jurisdiction over the remaining state law claims. In the alternative, at a minimum, Defendants argue the fraudulent mispresentation claim should also be dismissed due a failure to properly plead this cause of action with particularity. (*Id.* at p. 5). Finally,

---

[4] It should be noted that in the fact section of the complaint, Allred states that he was "extorted" by Defendants, however, he does not reference or plead extortion as one of the predicate offenses for this cause of action. (*Compare*, ECF No. 1 at ¶ 46, *with* ECF No. 1 at ¶ 53).

Defendants also argue Defendant Helsley should be dismissed from this case as there are no acts alleged in the complaint against her. (*Id.* at pp. 5-6)

Allred opposed the motion. (ECF No. 19). Allred asserts that the RICO claim is adequately pled in the complaint. In spite of not alleging a claim for extortion in the complaint, Allred argues that the complaint properly "alleges a pattern of 5 predicate acts of extortion." (*Id.* at p. 4-7). Allred then argues each of the state law claims are properly pled in the complaint. (*Id.* at 8-13).

In reply, Defendants reiterate Allred's complaint fails to properly state of claim for a civil RICO violation and points out none of alleged "predicate offenses" of extortion claimed in Allred's opposition actually constitute acts of extortion. (ECF No. 20 at pp. 2-3). In addition, Defendants reiterate the fraud claim is insufficiently pled and Allred's opposition failed to address whether Defendant Helsley should be dismissed from the action. (*Id.* at p. 3).

### 2. Allred's Motion to Amend

After the briefing on the motion to dismiss was completed, Allred filed a motion to amend the complaint. (ECF No. 27). The proposed amended complaint appears to be virtually identical to the original complaint – with one exception. Allred proposes to replace two "Doe defendants" by specifically naming Williams and Williams-Gonzalez as defendants in the caption and to list their places of residence in the body of the complaint. (*Id.* at pp. 2-3; *see also* ECF 27-1 at ¶¶ 11-12). All other factual statements, claims, and requested relief remain the same. Allred asserts the amendment should be granted because the involvement of Williams and Williams-Gonzalez was not "fully known" when the original complaint was filed. (*Id.* at p. 3). In fact, Allred goes so far as to claim that the identities of Williams and Williams-Gonzalez were "unknown at the time of the filing" the complaint. (*Id.*)

Defendants oppose the motion because the amended complaint does not correct or address any of the pleading failures pointed out by the motion to dismiss the original

complaint. (ECF No. 30). Therefore, the amendment should be denied because it is futile. (*Id.*) Allred failed to file any reply brief in support of the motion to amend.

### 3. Defendant's Motion to Compel Discovery

Finally, Defendants filed a motion to compel discovery due to Allred's failure to provide document production, which were initially due in November, 2018. (ECF No. 26). During a meet and confer held in January, Allred's counsel indicated that the failure to produce the requested documents was due to a lack of cooperation of Allred. (*Id.* at p. 3). Defendants request an order compelling Allred to produce the documents previously requested in discovery. Allred failed to file an opposition.

## II. DISCUSSION

### A. Motion to Dismiss

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000). The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court can grant the motion only if it is certain that the plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal

conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*[5]

### 1. Federal Civil RICO Claim

To state a civil RICO claim under 18 U.S.C. § 1962(c), Plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property. *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citations omitted). The Court finds that Plaintiff has failed to adequately plead a civil RICO claim as he has failed to properly establish either an enterprise or a pattern of racketeering activities.

#### a. Enterprise

To plead the existence of an enterprise under civil RICO, a plaintiff must plead that the enterprise has: "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." See *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009). At a minimum, Allred must allege DHT, Yingling, and Helsey "associated together for a common purpose of engaging in a course of conduct ... [and allege] evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686

---

[5] Defendants have attached several documents to the motion to dismiss that are not part of the complaint. The court has not considered these documents in deciding this motion, However, in deciding this motion, the court relies entirely upon the complaint and has not considered the additional documents. Therefore, the standard for a motion to dismiss is the applicable legal standard. *See United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir.2003) (generally a court may not consider material beyond the pleadings on a 12(b)(6) motion without converting the motion to dismiss to a motion for summary judgment, however, a court may consider materials including documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice, without converting the motion).

(9th Cir. 2015) (internal citations omitted). The complaint fails to provide any of this. In fact, there are no facts or allegations that how any of the alleged Defendants were connected except that DHT was Yingling's business and Helsey appears to have been employee of that complaint. Rather, Allred simply alleges a series of disconnected incidents, that generally only involve Yingling, with no indication of how the Defendants have any type of unified agenda. *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017); *see also Doan*, 317 F. App'x at 686 (finding no RICO enterprise where complaint did not state clearly what "each individual did, when they did it, or how they functioned together as a continuing unit").

### b. Pattern

A 'pattern of racketeering activity' consists of at least two acts of racketeering activity," which is any one of the acts listed in 18 U.S.C. § 1961(1), within a 10-month period. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987) (quoting 18 U.S.C. § 1961(5)). To constitute a pattern, a plaintiff must show "that the racketeering practices are related, and that they amount to or pose a threat of continued criminal activity," and are not merely "sporadic activity." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Racketeering predicates are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *United States v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc.*, 492 U.S. at 240). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the 'pattern'] requirement." *H.J. Inc.*, 492 U.S. at 242.

Here, Allred has failed to plead a patter of racketeering activity because he has not properly pled *any* predicate offenses inthis case. In the complaint, Allred identifies three predicate offenses that he claims were committed by Defendants: (1) wire fraud; (2) money laundering; and, (3) possession and/or receipt of stolen goods. However,

there are no facts in the complaint that establish any of these predicate offenses were committed by any of the named defendants.

"The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (citation omitted); *see also* 18 U.S.C. § 1343 (wire fraud statute). When wire fraud is pled as a predicate offense under the RICO Act, it must be pled with particularity under Federal Rule of Civil Procedure 9(b) like all other claims that sound in fraud. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 552-554 (9th Cir. 2007) (applying Rule 9(b) pleading requirements to wire fraud allegations underlying RICO).

There are no facts contained in the complaint that establish wire fraud in this case by a general pleading standard, much less with the particularity standard required by Rule 9(b). The complaint only makes loose allegations that Allred may have received a couple texts messages from Yingling and identifies a handful of calls between Allred, Yingling and/or Helsley that occurred over the course of several months. However, the complaint fails to allege: (1) most of the dates of when any of these alleged texts or calls allegedly took place; (2) what misrepresentations, if any, were made by any defendant during these communications; (3) any intent to defraud through these communications; (4) the communications traveled in interstate commerce or any other necessary facts to properly plead wire fraud. Therefore, Allred has failed to properly plead this predicate offense.

In addition, the complaint does not plead a claim for money laundering. Money laundering occurs when an individual knowingly engages, or attempts to engage in, a monetary transaction involving property that is derived from a specified criminal activity, if the property has a value greater than $10,000.00 and the actions occurred within the territorial jurisdiction of the United States. 18 U.S.C. § 1957. There are no facts in the complaint establishing the necessary elements for money laundering. The only transaction that could apply to this predicate offense appears to be Yingling's claim to

Allred that he must pay him $10,000.00 to remove the injunction on his trailer. Even assuming this payment was derived from a specified criminal activity as defined by Section 1957, there are no facts alleged in the complaint to establish Yingling, or anyone else, went on to *use* that $10,000.00 in a subsequent monetary transaction. The movement of money from a criminal activity to a subsequent monetary transaction is the entire crux of money laundering. Money laundering cannot occur until the subsequent financial transaction takes place. Here, there are no facts that any subsequent transaction occurred. As such, this predicate offense is also not properly pled in the complaint.

Finally, the complaint fails to properly third predicate offense for receipt and/or possession of stolen property in violation of 18 U.S.C. § 2315. (ECF No. 1 at ¶ 53). There are four elements of this predicate offense: (1) the defendant received or possessed stolen property; (2) the aggregate value of the property exceeded $5,000; (3) the defendant knew they were stolen; and, (4) the stolen property crossed state or federal boundary. 18 U.S.C. § 2315(a); *United States v. Bolin*, 423 F.2d 834, 835 (9th Cir. 1970). As a starting point, the complaint does not identify what property was stolen for purposes of this predicate offense. Assuming the "stolen property" Allred alludes to is the trailer held by Yingling, there are no allegations or claims that the trailer crossed a state or federal boundary after it was held by Yingling. Although there are some facts that Yingling may have used the trailer after it was in his possession, there are no facts or information alleged in the complaint related to where the trailer was used, how it was used, or the like. Therefore, Allred has failed to plead any of the predicate acts identified in the complaint and there are no set of facts that would permit Allred recovery under this claim.

Allred argues in his opposition that the complaint properly pleads "5 predicate acts" of Hobbs Act "extortion." (ECF No. 19 at 4). It must be noted that the complaint only references the word "extortion" one time and this crime is not listed as a predicate offense for purposes of the civil RICO claim in the complaint. (*See* ECF No. 1 at ¶ 53)

(listing predicated offenses as violations of 18 U.S.C. §§ 1343, 1957, and 2315). One reference to the word "extortion" is not sufficient to proper plead this as a predicate offense for a civil RICO claim. *See e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (while the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions.)

Moreover, there are no facts alleged in the complaint that establish any extortion occurred in this case. Pursuant to the Hobbs Act, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *United States v. Zemek*, 634 F.2d 1159, 1173 (9th Cir. 1980). In order establish a violation of the Hobbs Act, there must also be proof that interstate commerce was affected in some way as a result of the extortion. *United States v. Lynch*, 437 F.3d 902, 908-909 (9th Cir. 2006).

In his opposition, Allred asserts that the complaint alleges five predicate offenses of extortion. (ECF No. 19 at 4-6). These "five" offenses are as follows: (1) Allred paid Yingling $9,000 for the trailer; (2) Yingling later refused to deliver the trailer stating it could not be moved; (3) Yingling then used the trailer while it was in his possession; (4) Yingling procured $4,500.00 from Allred for the insurance premium; and, (5) Yingling demanded Allred pay him $10,000.00 to pay off the injunction. (ECF No. 19 at 4-6). None of these acts, as alleged in the complaint, support the elements of extortion.

There are no facts alleged in the complaint that Allred was threatened by any defendant – in any way – much less by force, attempted force, violence or fear. In addition, there are no facts alleged in the complaint that any of the defendants were acting "under color of official right." "Color of official right" extortion applies when a public official receives a payment for his agreement to perform a specific official act. *United States v. Tucker*, 133 F.3d 1208, 1214 (9th Cir. 1998). None of the defendants are alleged to be public officials nor are there any facts alleging the defendants were

working with a public official. As such, the complaint does not properly plead any crimes of extortion.

As such, Plaintiff has not adequately plead *any* predicate offense for purposes of a civil RICO claim. Therefore, this claim must be dismissed.

### 2. *State Law Claims*

With the dismissal of the federal civil RICO claim, the court finds that Allred's remaining state law claims should also be dismissed. The basic statutory grants of federal subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, while Section 1332 for "[d]iversity of citizenship" jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). A plaintiff properly invokes federal question jurisdiction when they plead a colorable claim "arising under" the Constitution or laws of the United States. *Id.*, citing *Bell v. Hood*, 327 U.S. 678, 681–685, (1946). By contrast, diversity jurisdiction is established when the plaintiff presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. See 28 U.S.C. § 1332(a).

In a case where jurisdiction of the court is based on a federal question, the court may also assert supplemental jurisdiction over pendent state law claims. 28 U.S.C. § 1367(a). However, when the court dismisses all claims that conferred original jurisdiction on the court, the court may decline to exercise supplement jurisdiction over the remaining state law claims. 18 U.S.C. § 1367(c)(3); *Carlsbad Technology, Inc. vs. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Here, the court finds that it should decline to maintain supplemental jurisdiction over the state law claims. None of the remaining claims alleged have any bearing on any type of federal law or federal issue. Each claim is entirely based on state law. As a matter of comity and judicial economy, the state courts are better situated to address these claims.

Moreover, the court not have diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332. In order to maintain diversity jurisdiction over these claims, the amount in controversy must exceed $75,000.00. A liberal review of the

complaint reveals that the amount in controversy does not appear to exceed $75,000. (ECF No. 1 at ¶¶ 12-50). Rather, it appears the amount in controversy is approximately $65,000 – at most.

As the court has declined to assert supplement jurisdiction and it lacks diversity jurisdiction, the state law claims must be dismissed. As such, the court grants Defendants' motion to dismiss in its entirety.

B. Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give leave [to amend a pleading] when justice so requires." However, the ability to amend is not without limits. Federal courts balance five factors when considering a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). The factors do not weigh equally; as the Ninth Circuit has explained, prejudice receives greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Defendants bear the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment. *Id.* (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).

When considering prejudice, the court may weigh against the movant the amended pleading's great alteration of the litigation's nature and its effect of requiring an entirely new course of defense. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Alone, such alteration is not fatal. Id. In contrast, futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 809 (9th Cir. 2003). Futility arises when the amendment is legally insufficient, *Miller v. Rykoff-Sexon, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), or "where the amended complaint would . . . be subject to dismissal[,]" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

Allred has moved to amend his complaint and provided a proposed amended complaint for the court's consideration. (ECF No. 27, 27-1). The proposed amended complaint appears to be virtually identical to the original complaint – with one exception. Allred proposes to replace two "Doe defendants" by specifically naming Williams and Williams-Gonzalez as defendants in the caption and by listing their places of residence in the body of the complaint. (*Id.* at pp. 2-3; *see also* ECF 27-1 at ¶¶ 11-12). All other factual statements, claims, and requested relief remain the same. Allred asserts the amendment should be granted because the involvement of Williams and Williams-Gonzalez was not "fully known" when the original complaint was filed. (*Id.* at p. 3). In fact, Allred goes so far as to claim that the identities of Williams and Williams-Gonzalez were "unknown at the time of the filing" the complaint. (*Id.*)

The amended complaint makes no substantive changes from the original complaint. As a result, the proposed complaint does not cure any of the substantive deficiencies that form the basis for the motion to dismiss filed in relation the original complaint. Therefore, the proposed amended complaint, like the original complaint, would be dismissed pursuant to Rule 12(b)(6) for the same reasons articulated in this order. As such, the motion to amend the complaint must be denied because it would be futile.[6]

C. Motion to Compel

Having found that this case should be dismissed in its entirety, the court finds that the motion to compel is now moot. Therefore, Defendant's motion to compel is also denied.

=

---

[6] The court rejects Allred's claims that the identities of Williams and Williams-Gonzalez were "unknown at the filing" of the complaint. Both Williams and Williams-Gonzalez were specifically named – using their full names in the original complaint. (See ECF No. 1 at ¶ 17) (naming "Frederick 'Rick' Williams"); (ECF No. 1 at ¶ 35) (naming "Elizabeth Williams-Gonzalez"). Therefore, Allred's claim that he did not know the identities of these individuals when he filed the complaint is simply false and the argument is not well taken by the court.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED as follows:**

1. Defendants' motion to dismiss (ECF No. 16) is **GRANTED**;
2. Allred's motion to amend (ECF No. 27) is **DENIED**; and
3. Defendants' motion to compel (ECF No. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATE: 3/22/2019

_____
UNITED STATES MAGISTRATE JUDGE